CITY OF BOSTON vs. BOSTON POLICE PATROLMEN'S
ASSOCIATION, INC.

Suffolk.    April 12, 1979. — August 9, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Arbitration. Boston. Police. Municipal Corporations*, Collective bar-
gaining, Police. *Contract*, Collective bargaining contract, With
municipality.

It was within the managerial powers of the police commissioner of the
   city of Boston under St. 1906, c. 291, §§ 11 and 14, to require that
   a police officer who had been suspended for one year followed by a
   one-year probationary period because he had threatened three
   civilians with his service revolver while he was intoxicated and off
   duty submit to a psychiatric evaluation as a condition of the reissu-
   ance of the officer's service revolver, and an arbitrator's award that
   the officer's service revolver be returned to him was, therefore, in
   excess of his powers within the meaning of G. L. c. 150C, § 11(a)(3).
   [225-227]

CIVIL ACTION commenced in the Superior Court on Feb-
ruary 15, 1977.

The case was heard by *McNaught*, J.

*Dennis G. Austin*, Assistant Corporation Counsel, for
the plaintiff.

*Kevin P. Phillips* for the defendant.

PERRETTA, J. The plaintiff, city of Boston, commenced
this action pursuant to G. L. c. 150C, § 11, seeking to
vacate the award of an arbitrator who had ordered the
Boston police commissioner to reissue a service revolver
to a police officer, a member of the defendant Boston
Police Patrolmen's Association, Inc. The association
moved to confirm the award in the Superior Court pursu-
ant to G. L. c. 150C, § 10. The trial judge entered an order
allowing the motion for confirmation, and the city ap-

pealed; however, because no judgment has been entered
the appeal must be dismissed. Mass.R.Civ.P. 58(a), as
amended, 371 Mass. 908 (1977). *Tisei* v. *Building Inspector of Marlborough*, 5 Mass. App. Ct. 328, 330 (1977). *Levy*
v. *Bendetson*, 6 Mass. App. Ct. 558, 561 (1978). Because
the issue has been fully briefed and argued, we express
our views in this matter in the event the city should
decide to move for a rehearing on the association's motion. *Koonce* v. *Aldo Realty Trust, ante* 199 (1979).

In July of 1972 the police officer threatened three civilians with his service revolver while he was intoxicated
and off duty.[1] The police commissioner suspended him for
one year, followed by a one-year probationary period.
This was the second suspension for the officer, who also
had other disciplinary blemishes on his record. During
his probationary period, however, the officer conducted
himself in an exemplary manner while serving in an
administrative and clerical capacity. It appeared to those
associated with him that he had overcome his problem
with alcohol. On the basis of his performance during his
probationary period and the recovery from his illness, the
officer, upon completion of his probation, requested police
officials to reissue his service revolver to him so that he
would be eligible for overtime assignments and paid details. It appears from the arbitrator's award and the arguments of counsel that paid private details and certain
overtime duties are assigned only to armed police officers. The record presented to us provides no support for
this fact, but we treat it as one proven because of our
limited review of factual determinations in arbitration
disputes. See *Fazio* v. *Employers' Liab. Assur. Corp.*, 347
Mass. 254, 258 (1964). A police official advised the officer
that it would be in the police department's best interest

---

[1] The fact that the officer was off duty does not remove his action
from the review of the police commissioner. St. 1962, c. 322, § 11.
*Broderick* v. *Police Commr. of Boston*, 368 Mass. 33, 34 n.1. (1975), cert.
denied, 423 U.S. 1048 (1976).

to obtain a medical opinion concerning the officer's fitness to carry a gun, and he requested that the officer be examined by the department's physician. The officer agreed to the examination, but the physician referred him to a psychiatrist for an evaluation. The association argues that while the officer had agreed to be physically examined, he has never agreed to be interviewed by a psychiatrist.[2] The officer has not been psychiatrically evaluated as requested, and the commissioner has refused to return the service revolver to the officer, asserting that it is the prerogative and responsibility of the commissioner, under St. 1906, c. 291, §§ 11 and 14, as appearing in St. 1962, c. 322, § 1,[3] to control the issuance of a weapon to any police officer. The association asserts that the city relied upon a promulgated special order before the arbi-

---

[2] The association argues that the city, in requesting and scheduling the examination, did not follow the procedures set out in the collective bargaining agreement. We note that these procedures pertain to questions regarding an officer's fitness to return to duty after an absence due to an illness incurred in the line of duty. The arbitrator's opinion on this point is confusing, but we will not look behind his determination (*Fazio* v. *Employers' Liab. Assur. Corp., supra* at 258; *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390-391 [1973]), and we proceed on the basis that the collective bargaining agreement was not followed when the examination was requested.

[3] Section 11, as so appearing, provides in pertinent part: "The police commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department and shall make all needful rules and regulations for the efficiency of said police. . . . Officers and members of said police shall, whether on or off duty, be subject to the rules and regulations made under this section."

Section 14, as so appearing, provides: "The superintendent of police and the other officers and members of said police shall have the powers and perform the duties from time to time conferred or imposed upon the chief and other police officers of cities by section ninety-eight of chapter forty-one of the General Laws, except that they shall when on duty carry such weapons as the police commissioner shall determine. The superintendent of police and the other officers and members of said police shall also have the powers and perform the duties from time to time conferred or imposed on police or police officers in this commonwealth by general laws applicable to Boston."

trator. The arbitrator makes no mention of it in his opinion, and the city does not rely upon the order in its brief; rather, its argument is based solely upon §§ 11 and 14. The association makes no mention of the statutes in its brief and relies upon the order. However, the association has neither provided us with a full text of the order, nor has it shown that the order was a matter before the arbitrator or the trial judge. Therefore, we disregard this order in our consideration. Mass.R.A.P. 16(e) and (f), 18(a) and (b), 365 Mass. 862, 864, 865 (1974). We note only in passing that to the extent it has been quoted in the association's brief it is not inconsistent with § 11 or § 14 and does not conflict in any respect with the city's position.

The arbitrator found that the deprivation of the officer's service revolver after completion of his suspension and probationary period constituted extended punishment and that the collective bargaining agreement did not provide for sanctions based upon prior misconduct once an officer has been allowed to return to duty. Based on this rationale, the arbitrator concluded that the commissioner lacked authority to withhold the officer's revolver from him. He, therefore, ordered the commissioner to return the gun to the officer. He also found that the agreement required a fair and equitable distribution of overtime assignments and paid details among those officers within a district who requested such work. This overtime work was a source of additional income to them. Because the officer was eligible for this work as of the date his service revolver should have been returned, he ordered that the officer be paid an amount equal to that which he would have earned had he been participating in the extra work from that date. Although the city in its complaint requests that the total award of the arbitrator be vacated, its brief deals solely with the power of the arbitrator to order the commissioner to reissue a service revolver to the officer. We treat as waived any issue pertaining to the award of the overtime assignment and paid detail earnings. Mass.R.A.P. 16(a)(4), as amended, 367

Mass. 921 (1975). Accordingly, we determine neither whether this aspect of the award was properly before the arbitrator as a matter encompassed by the agreement and an issue referred to him for resolution (*School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 690-691 [1976]; *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788, 792 [1977]) nor whether the arbitrator's resolution of the issue was within his power to fashion a proper remedy. *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121, 125-128 (1977).

The award before us, the return of the officer's weapon, is not one which is founded upon or fashioned as a result of the commissioner's failure to follow agreement procedures for resolution of the dispute. See *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 71-72 (1979). The arbitrator found that the commissioner did not follow the determination of fitness to return to duty clause of the agreement (see note 2, *supra*); however, the officer was returned to duty by the commissioner, notwithstanding any failure to comply with the agreement. Thus, the issue for our review is whether the denial of a weapon which concomitantly resulted in the deprivation of overtime assignments and paid details was a proper dispute for arbitration. *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 158 (1975), *S.C.*, 369 Mass. 683 (1976). *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Assn.*, 372 Mass. 116, 119 (1977). Few subjects, if any, in the realm of labor relations present themselves singly or unattached to other concerns. See e.g., *Fibreboard Paper Prod. Corp.* v. *NLRB*, 379 U.S. 203, 223 (1964) (Stewart, J., concurring) ("In many of these areas the impact of a particular management decision upon job security may be extremely indirect and uncertain, and this alone may be sufficient reason to conclude that such decisions are not 'with respect to . . . conditions of employment' "); *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 461 (1976) ("[T]he conditions of employment of school teachers and subjects within the

prerogative of a school committee are not mutually exclusive"). When an arbitral award which does not involve merely issues of the employer's procedural adherence to an agreement's dispute resolution clause mandates actions by the employer and those actions encompass both subjects of arbitration and subjects of policy, then the legal effect of the award is to be determined by a balancing test. If the "ingredient of . . . policy in the issue subject to dispute is so comparatively heavy that collective bargaining . . . on the subject is, as a matter of law, to be denied effect," the award cannot stand. *School Comm. of Boston* v. *Boston Teachers Local 66, supra* at 71. On balance, the policy consideration concerning the issuance of a weapon here far outweighs any other concern.

In this Commonwealth the decision as to who shall carry a firearm and under what conditions, be it a public official or a private citizen, is one which our Legislature has seen fit to leave with the heads of law enforcement agencies. See e.g., G. L. c. 8, § 12 (State superintendent of buildings may arm the capitol police); G. L. c. 21, § 6B (natural resources officers may carry weapons only as the director "may in writing authorize"); G. L. c. 41, § 98 (police officers of all cities and towns may carry weapons only as the police chiefs may determine); G. L. c. 90, § 29 (specified employees of the Registry of Motor Vehicles may carry weapons only as the registrar may determine); G. L. c. 111, § 9 (inspectors for the Department of Public Health investigating narcotic and harmful drug violations may carry firearms only at the request of the Commissioner of Public Health); G. L. c. 140, § 131 (any person wishing to carry a firearm may do so only upon receipt of license issued by the Commissioner of Public Safety or by the chief of police in the city or town where the citizen lives or has place of business); G. L. c. 147, § 2 (officers and inspectors of the Department of Public Safety may carry firearms only upon authorization of Commissioner of Public Safety); G. L. c. 147, § 21A (persons appointed as

police cadets by a city or town for a period of "on the job" training "shall not carry arms"); St. 1906, c. 291, § 14, as appearing in St. 1962, c. 322, § 1 (Boston police officers "shall when on duty carry such weapons as the police commissioner shall determine"). This compendium of legislation demonstrates a clear policy statement by the General Court: the carrying of firearms is to be controlled by specified officials. Their decisions are based upon concerns for "the protection of society from criminals, the protection of police officers' safety, and the preservation of all human life if possible." *Long Beach Police Officers Assn.* v. *Long Beach*, 61 Cal. App. 3d 364, 371 (1976). The concerns of public officials should reflect those of the public, and its safety cannot be placed upon the bargaining table as if it were a subject open to compromise and negotiation. Public safety must be left to the appropriate officials and to the political process which affects public policy. Cf. *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. at 71. This is not to say that governmental management can hide behind a curtain of public safety; what constitutes a legitimate "public safety" exclusion from arbitration will have to be decided on a case by case basis. *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. at 464 n.5.

The source of the commissioner's managerial powers is found in St. 1906, c. 291, §§ 11 and 14. Section 11, when read with § 14 and G. L. c. 41, § 98, vests in him the control of the police department's rules and regulations, and under this power he may properly promulgate orders on the subject of firearms. See e.g., *Reinstein* v. *Police Commr. of Boston*, 378 Mass. 280, 287-288 (1979). This right to promulgate departmental rules in no way limits the commissioner's managerial and administrative prerogatives; rather, the authority allows him to implement those prerogatives, and the commissioner possesses broad discretion in formulating such rules. *Boston Police Patrolmen's Assn.* v. *Police Commr. of Boston*, 4 Mass. App. Ct. 673, 674-675 (1976). See *Broderick* v. *Police Commr. of*

*Boston,* 368 Mass. 33, 39 (1975). The collective bargaining agreement itself expressly reserves to the commissioner the full measure of these legislatively established prerogatives: "Subject to this Agreement and applicable law, the city (and its ... Police Commissioner) reserves and retains the regular and customary rights and prerogatives of municipal management." The commissioner did not surrender or diminish his power to control weapons, nor could he, when he bargained as to overtime assignments and paid details or when he enacted rules or orders concerning equipment to be carried by officers performing those responsibilities.

Because the commissioner must appropriately exercise this power, we turn next to the question whether his requirement that the officer submit to a psychiatric evaluation as a condition of the reissuance of the officer's service revolver was proper. We conclude that it was. There is nothing in this case to suggest, and the association does not claim, that the commissioner's action "was a pretense or device actuated by personal hostility." *School Comm. of Braintree* v. *Raymond,* 369 Mass. at 689. The circumstances underlying the commissioner's request indicate that this officer had displayed particularly bad judgment in regard to when and how he would use an instrument of deadly force. We cannot say that the commissioner was motivated by a concern other than that of safety, the public's, the officer's, and that of his coworkers. The arbitrator's findings that the officer has recovered from his illness and that he is now performing well do not require us to substitute our judgment for that of the commissioner or look behind his decisions in the absence of a showing that he has abused his managerial powers.

The arbitrator's award that the officer's service revolver be returned to him was in excess of his powers within the meaning of G. L. c. 150C, § 11(*a*)(3); however, there being no judgment in this case, the appeal is dismissed.

*So ordered.*