White, J.
Plaintiff City of Everett (the “City”) brought this action to vacate an arbitration award, pursuant to G.L.c. 150C, §11(a). The City asserts that, contrary to the arbitrator’s decision, it did not violate the collective bargaining agreement when the Chief of Police unilaterally ordered day shift police officers to remain in uniform, in radio contact, and within the jurisdiction of the city of Everett during their lunch relief. Moreover, the City argues that the matter was not the proper subject of arbitration because the public policy and public safety matters involved were nonbarginable, managerial prerogatives. Defendant International Brotherhood of Police Officers, Locals 633 and 634 (the “Union”) seeks confirmation of the award, pursuant to G.L.c. 150C, §ll(d). For the reasons set forth below, the City’s request is DENIED and the arbitration award is AFFIRMED.
BACKGROUND
The facts found by the arbitrator are summarized as follows. The City and the Union are parties to a collective bargaining agreement covering the period from July 1, 1988 through June 30, 1991 (the “agreement”).[1]
Prior to 1984, the day shift was nine (9) hours, one hour longer than either of the night shifts. To equalize the shifts, day shift employees were granted a one hour duty-free paid lunch period. Since approximately 1984, the Everett Police Department has operated three (3) eight (8) hour shifts; however, the contractual grant of a one hour duty-free paid lunch period was continued for the day shift.
Article 7 of the agreement governs officers’ hours of duty. Specifically, Section 7.3 provides:
7.3 Lunch/Dinner Reliefs
Employees working night shifts shall be entitled to a dinner relief during their regular work shift subject, however, to the needs of the Department.
Employees working the day shift shall receive a one (1) hour paid lunch relief, during which time they shaU. not be subject to the needs of the Department However, at least one (1) superior officer must remain on duty in charge of the shift at all times.
*631 (Emphasis added.)
During the day shift, the officers’ one hour lunch period is taken between 12:00 noon and 2:00 p.m. Lunch hours are staggered so that at least one-half of the officers are on duty during that time.
The evidence at the arbitration hearing established that officers, during their lunch period, have gone to their residences, have doffed uniforms to work out or jog, have traveled to gym facilities outside Everett, have shut off their car and personal radios, and have engaged in other personal business. The practice has apparently been to complete a call initiated prior to the lunch period, but not to initiate any new calls once the lunch period had commenced. Any response completed after the start of the lunch period was compensated at time and one-half rates. This lunch practice has been in effect since approximately 1981.
James Bonnell was appointed Chief of Police in October 1992. Approximately one month later, he learned of the lunch time practices of the officers. Chief Bonnell had addressed the lunch hour issue with staff during some 15 to 20 staff meetings, hoping to affect a mutually agreed upon change. Chief Bonnell believed that the officers’ practices reduced Department efficiency and created a risk to public safety and the safety of the police officers.
On February 23, 1994, Chief Bonnell issued a memorandum which provided in pertinent part:
Effective Immediately, all Officers assigned to the day shift hours will remain in their uniform of the day, will retain all issued equipment, will remain in radio contact, and will not leave the city limits during subject period unless given specific prior approval by the O.I.C.; and when they are called or do respond to an emergency they will be properly compensated as per the present contract.
Section 25.3 of the agreement states that its provisions “supersede any conflicting or inconsistent rule, regulation or order promulgated by the Chief of Police.” Thus, pursuant to Article 12.2, the Union grieved the February 23, 1994 memorandum. The officers, however, conformed to the ordered changes, responding when called during their lunch period. In such cases, they were paid time and one-half pay during such time response.
Prior to the issuance of the Chiefs memorandum, new contract negotiations had begun. On April 12, 1994, Mayor McCarthy issued a notice of termination of Collective Bargaining with the Union and of the Cily’s intent to terminate the Agreement “60 days from receipt of this notice.”
Pursuant to Article 12.3 of the agreement, this matter was arbitrated on October 3, 1994. The arbitrator rendered an Opinion and Award dated November 21, 1994. He found that the grievance was arbitrable and the City violated Section 7.3 of the agreement by the issuance of the Chiefs February 23, 1994 Memorandum. He further ordered that employees affected should “be made whole for any earnings lost.”
DISCUSSION
The scope of review of an arbitrator’s award is narrow. “Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). Nevertheless, upon application filed within thirty days after deliveiy of an award, a Superior Court judge may vacate a labor arbitration award if the “arbitrator exceeded [his] powers.” G.L.c. 150C, §11 (a)(3).
“An arbitrator exceeds his authority [if he] grantfed] relief beyond the scope of the arbitration agreement, see Royal Indemnity Co. v. Blakely, 372 Mass. 86, 87 n.2 (1977), [] award[ed] relief beyond that to which the parties bound themselves, see Local 589Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 411 (1984), [] award[ed] relief prohibited by law, see Marlborough v. Cybulski, Ohnemus & Assocs., 370 Mass. 157, 160 (1976) . . . [or] award[ed] relief of a nature which offends public policy . . . [see] Lawrence v. Falzarano, 380 Mass. 18, 28 (1980).” Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., supra at 1007. None of these factors is present in this case.
A. Arbitrability of Lunch Time Duty
The City argues that the Chiefs unilateral order, requiring day officers to remain ready for duty on their lunch hour, concerns public policy and is a managerial prerogative that is nonnegotiable and not subject to arbitration. The City therefore contends that the arbitrator, in granting the award, has exceeded his authority. The court disagrees.
Certain subjects in the public sector are beyond the scope of collective bargaining as they constitute nonbarginable and nondelegable management prerogatives, even where such terms are included in the agreement. See Boston v. Boston Police Patrolmen’s Ass’n, 403 Mass. 680 (1989); Burlington v. Labor Relations Comm’n, 390 Mass. 157, 164 (1983). Generally, public safety is one such subject that “must be left to the appropriate officials and to the political process which affects public policy.” Taunton v. Taunton Branch of the Mass. Police Ass’n, 10 Mass.App.Ct. 237, 243 (1980), quoting Boston v. Boston Police Patrolmen’s Ass’n, 8 Mass.App.Ct. 220, 226 (1979).
“What constitutes a legitimate ‘public safety’ exclusion from arbitration will have to be decided on a case by case basis.” Boston v. Boston Police Patrolmen’s Ass’n, supra at 226, quoting Boston Teachers Local 66 v. School Comm, of Boston, 370 Mass. 455, 464 n.5 (1976). The test is whether the “ingredient of [public] policy in the issue subject to dispute is so comparatively heavy that collective bargaining ... on the sub *632 ject is, as a matter of law, to be denied effect.” Boston v. Boston Police Patrolmen’s Ass'n, supra at 225, quoting School Comm, of Boston v. Boston Teachers Local 66, 378 Mass. 65, 71 (1979).
The City has asserted that issues concerning the officers’ duty-free paid lunch period is so infused with pubic safety that the Chiefs order is not subject to arbitration. This contention, however, is unsupported by any evidence in the record. There is nothing in the record to suggest that having three (3) officers on duty during the day-time lunch shift for two (2) hours has caused any problems or may cause any problems. The City has not put forth evidence, either before this court of the arbitrator, that any incidents of the kind with which the City is concerned have occurred due the alleged lack of coverage during the lunch shift. For example, there is no evidence that emergency calls went unanswered, that fellow officers were injured in the line of duty due to lack of back-up, that any property damage occurred, or that there were any events that could not be handled by those who were on duty during the lunch shift.
The City must do more than make bald assertions that the Chiefs order implicates public policy. There must be some facts or law supporting those assertions. The City “cannot hide behind a curtain of public safety” in an attempt to avoid collective bargaining. Boston v. Boston Police Patrolmen’s Ass’n, supra, 8 Mass.App.Ct. at 226. The court concludes, as a matter of law, that public policy is not so infused that the City may forego negotiations over the lunch hour duty issue.
On the contrary, what was at issue before the arbitrator was simply what hours the officers who fill the day shift slots will work, their compensation if they must work during their lunch period, and the terms and conditions of their day time employment. Classically, these issues are within the realm of collective bargaining. See G.L.c. 150E, §6 (“The employer and the exclusive representative... shall negotiate in good faith with respect to wages, hours . . . , and any other terms and conditions of employment . . .”). See also City of Everett and IAFF, Local 1656, 2 MLC 1471 (1978), affd, Labor Relations Comm’n v. Everett, 7 Mass.App.Ct. 826, rev. denied, 379 Mass. 925 (1979). Thus, the court concludes that whether the Chiefs unilateral order violated the collective bargaining agreement was arbitrable.
B. Interpretation of Lunch Time Duty Provision
The City argues that even if the matter is arbitrable, the arbitrator exceeded the scope of his authority because his award added to, or detracted from the agreement. The court disagrees.
Once it is determined that a matter is arbitrable, the court generally will not review the merits of an arbitrator’s decision. School Comm of Boston v. Boston Teachers Local 66, supra, 378 Mass, at 69. “The question of interpretation of the agreement is for the arbitrator ...” Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., supra, 407 Mass, at 1007, citing Morceau v. Gould Nat’l Batteries, Inc., 344 Mass. 120, 124 (1962). In fact, it is the arbitrator, and not the court, who construes ambiguities in a collective bargaining agreement. See Concerned Minority Educators of Worcester v. School Comm of Worcester, 392 Mass. 184 (1984); and Wachusett Regional Dist. Sch. Comm v. Wachusett Regional Teachers Ass’n, 6 Mass.App.Ct. 851 (1978).
In this case, plaintiff argues that nothing in the agreement provides for the officers’ use of their lunch relief to shed uniforms, exercise, or leave the jurisdiction of the city. The arbitrator, however, has interpreted the unambiguous language of the contract to mean that day shift officers may use their lunch hour as they wish, so long as they complete any call initiated before lunch. The provision reads:
Employees working the day shift shall receive a one (1) hour paid lunch relief, during which time they shall not be subject to the needs of the Department. However, at least one (1) superior officer must remain on duty in charge of the shift at all tines.
(Emphasis added.) This conclusion is particularly evident when read in conjunction with the night shift officers’ dinner relief provision:
Employees working night shifts shall be entitled to a dinner relief during their regular work shift subject, however, to the needs of the Department.
(Emphasis added.)
The arbitrator found that the Chiefs unilateral order, requiring all day shift officers to remain in uniform, in radio contact, and within the jurisdiction of the city of Everett, was in direct conflict with the provisions of the agreement. The arbitrator based his decision on the evidence before him, particularly the evidence which revealed that the officers have been using the lunch hour for their own needs since 1981. The arbitrator further concluded that officers on other shifts may be required, when on meal relief, to meet the needs of the Department, but those on the day shift are free of that responsibility for the one hour lunch period. The arbitrator determined, and this court agrees, that if the Chief wants to change the agreement, he must do so by negotiating in good faith. Thus, the award is affirmed.
ORDER
It is hereby ORDERED that the City’s request that the arbitrator’s award be vacated is DENIED, and pursuant to G.L.c. 150C, §ll(d), the arbitrator’s award is AFFIRMED.

The agreement provides that after June 30, 1991, the agreement will remain in effect until a new agreement has been reached or either party gives a 60-day termination notice.