School District of Beverly vs. James Geller.

No. 98-P-564.

Suffolk. September 15, 1999. - October 23, 2000.

Present: Brown, Laurence, & Gelinas, JJ.

Further appellate review granted, 433 Mass. 1101 (2001).

*Arbitration,* Judicial review, Award, School committee. *Statute,* Construction. *Public Policy. School and School Committee,* Arbitration, Appeal from dismissal, Termination of employment. *Public Employment,* Termination. *Assault and Battery.*

Discussion of the scope of judicial review under G. L. c. 150C of an arbitration award. [293-294]

Discussion of circumstances in which public policy considerations require that an arbitrator's award be vacated as beyond the arbitrator's authority. [294-295]

Where a public school teacher's conduct in repeatedly using physical force against his sixth-grade students resulted in his dismissal after appropriate hearings, an arbitration award reinstating the teacher was in violation of a well defined public policy of protecting children in school against physical or corporal punishment and psychological abuse, and the award was beyond the authority of the arbitrator. [295-297]

CIVIL ACTION commenced in the Superior Court Department on September 3, 1997.

The case was heard by Allan van Gestel, J.

*Alan Kaplan* for the plaintiff.

*Matthew D. Jones* for the defendant.

*Matthew D. Jones, Jeffrey Jacobsen, Donald J. Siegel, Elizabeth A. Sloane & Wayne Soini* for Massachusetts Teachers Association & others, amici curiae, submitted a brief.

*Michael J. Long & Rosann DiPietro* for Massachusetts Association of School Superintendents, amicus curiae, submitted a brief.

GELINAS, J. The Beverly school district brought an action in Superior Court under G. L. c. 150C, § 11, to vacate an arbitrator's award reinstating James Geller to his position as a

teacher in the district, albeit with a substantial penalty.[1] A Superior Court judge granted summary judgment in favor of Geller, sustaining his reinstatement. We reverse the judgment of the Superior Court and vacate the arbitrator's award, thus confirming Geller's discharge by the district.

We take the facts from the arbitrator's findings. Geller, employed for twenty-five years by the district, was, at times relevant here, a sixth-grade teacher at the district's Memorial Middle School. In November of 1995, Geller yelled at his students in the classroom, making them feel uncomfortable. A letter from a parent to the district resulted in a meeting, in the course of which Geller admitted to having "outbursts" and that he was working on calming down. The assistant principal, who was present at the meeting, cautioned Geller that the issue was serious and that, if indeed such conduct was taking place in the classroom, it should not be.

In the spring following that meeting and the admonition to Geller, in the course of one week in May, 1996, Geller was involved in three separate incidents involving use of physical force against three of his sixth-grade students. Self-defense or defense of others was not an issue. The arbitrator credited the witnesses' version of events, as follows.

On May 22, 1996, student A.B.[2] got up in class to retrieve a pencil that had fallen on the floor. Geller, after yelling at the student, took him by the elbow and "directed" him, very, very fast, out of the classroom and into the hallway. Once in the hall, Geller pushed or threw A.B. against a locker and then pushed A.B.'s head, forcing him against the wall next to the lockers. A witness to the event, also credited by the arbitrator, described Geller as grabbing A.B. by the shirt (around the collar) and throwing him against the locker. A nurse testified that two days later she observed a bruise on A.B.'s elbow, consistent with his being held in a forceful way.

The second incident occurred on May 23, 1996. C.D., another sixth-grade student, was standing near a chair in the classroom when Geller ordered all students to be seated. C.D. did not sit immediately, and Geller approached him from the rear, poking

---

[1] The arbitrator's award, reinstating Geller as of the beginning of the 1997-1998 school year without back pay, effectively caused Geller to lose salary he would have earned from the date of his suspension, October 29, 1996, to the date of reinstatement.

[2] We do not identify the students by name.

C.D. in the back three times in rapid succession. When C.D. turned, Geller shoved him with both hands; the force was sufficient to knock C.D. off balance and he fell on top of a desk. Geller then grabbed C.D. by the hand and pulled him over to the teacher's desk. C.D. told his mother, who reported the incident to the principal. C.D. felt afraid of Geller as a result of the incident and did not return to Geller's class for the rest of the year.

The third incident, involving E.F., occurred on or about May 27, 1996. (E.F. was not clear as to the exact date.) E.F. admitted humming, with a view to distracting Geller. Geller grabbed E.F. by the shoulders and pushed him hard against the door. Geller then opened the door, pushing E.F. into the hallway and up against a locker, while screaming and yelling at him. E.F. reported the incident to his mother, who notified the authorities.

The arbitrator found that Geller did not intend to hurt the students, nor did he intend to administer corporal punishment, but rather had used these actions "as a means of getting the students' attention." The district, after appropriate hearings, dismissed Geller. Geller grieved the dismissal under the provisions of G. L. c. 71, § 42,[3] resulting in his reinstatement. The district applied to the Superior Court, where the award was

[3]General Laws c. 71, § 42, as appearing in St. 1993, c. 71, § 44, provides in pertinent part: "A teacher with professional teacher status, pursuant to section forty-one, shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause.

"A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the commissioner. The commissioner shall forward to the parties a list of three arbitrators provided by the American Arbitration Association. Each person on the list shall be accredited by the National Academy of Arbitrators. The parties each shall have the right to strike one of the three arbitrators' names if they are unable to agree upon a single arbitrator from amongst the three. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association to be consistent with the provisions of this section. . . . The board of education shall determine the process for selecting arbitrators for the pool. The fee for the arbitration shall be split equally between the two parties involved in the arbitration.

"At the arbitral hearing, the teacher and the school district may be represented by an attorney or other representative, present evidence and call witnesses and the school district shall have the burden of proof. In determining whether the district has proven grounds for dismissal consistent with this

affirmed. The district has appealed, arguing that the Superior Court erred in ruling that the award did not violate public policy.

Arbitration awards made under the provisions of G. L. c. 71, § 42, are subject to judicial review as provided in G. L. c. 150C. See G. L. c. 71, § 42, sixth par.

Usually, arbitration proceedings are based on a contractual agreement to arbitrate and the strength of arbitration awards — which may not be overturned save for corruption, illegality, errors in procedure, or conflict with public policy, and those instances where the arbitrator exceeds his authority, see G. L. c. 150C, § 11 — follows from the agreement. Here, the Legislature and not the parties has mandated arbitration and limited the scope of judicial review to those areas identified in G. L. c. 150C, § 11.

It is a rule of statutory construction that in enacting legislation, here, G. L. c. 71, § 42, which makes arbitral awards thereunder subject to review under G. L. c. 150C, the Legislature is aware of pre-existing law, here, the narrow scope of judicial review afforded arbitration awards under G. L. c. 150C and considerations of public policy that permit a court to vacate an award, see, e.g., *School Comm. of Hanover* v. *Curry*, 369 Mass. 683, 685 (1976); *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980); *Boston* v. *Boston Police Patrolmen's Assn.*, 8 Mass. App. Ct. 220, 225-227 (1979).

It is well established that judicial review of arbitration awards under G. L. c. 150C is exceptionally narrow. Section 11 of the statute provides that, absent fraud, corruption, or certain procedural irregularities, none of which is present here, the Superior Court, on application of a party, may vacate an award only if the arbitrator has exceeded his powers. Neither error of fact nor error of law provides grounds for vacating an award. *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 792-793 (1977). *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984). *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 15 (1995). "Th[is] policy of limited judicial review is reflective of the strong public policy favoring arbitration." *Massachusetts Hy. Dept.*, *supra* at

---

section, the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards."

Geller was a teacher with professional teacher status.

16, quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).

However, "arbitration . . . may not 'award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision' . . . ." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1007, quoting from *Lawrence* v. *Falzarano*, 380 Mass. at 28. Such an award is beyond the arbitrator's powers and therefore may be vacated under G. L. c. 150C, § 11(*a*)(3). See *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. at 16; *Boston* v. *Boston Police Patrolmen's Assn.*, 8 Mass. App. Ct. at 225-227.

"To be vindicated, public policy 'must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " *Massachusetts Hy. Dept.*, *supra* at 16, quoting from *W.R. Grace & Co.* v. *Local Union 759, Intl. Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983). "[A] formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award . . . ." *Massachusetts Hy. Dept.*, *supra* at 17, quoting from *United Paperworkers Intl. Union* v. *Misco, Inc.*, 484 U.S. 29, 44 (1987).

The public policy exception does not address "disfavored conduct, in the abstract, but [only] disfavored conduct which is *integral to the performance of employment duties*" (emphasis original). *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). "Where the person performs his employment duties and, *in doing so*, violates standards, restraints and restrictions on conduct, clearly and explicitly established by the people in their laws, a requirement that the employer suffer that malperformance and not discharge the offender does itself violate the same well established public policy" (emphasis original). *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, *supra* at 674. "Arbitration awards reinstating discharged employees are thus not upheld if the public policy relates to the worker's employment and the 'offense [goes] to the heart of the worker's responsibilities.' " *Massachusetts Hy. Dept.*, 420 Mass. at 17, quoting from *United States Postal Serv.* v. *American Postal Workers Union*, 736 F.2d 822, 823, 825 (1st Cir. 1984)

(employee embezzled money from the post office in violation of statutes specifically forbidding such conduct by postal employees and of the public trust in the post office).

Arbitration awards reinstating discharged employees may also be vacated if the award violates a public policy that exists because the nature of the job itself makes the employee's conduct an immediate threat to the general public. *Massachusetts Hy. Dept., supra* at 18, and cases cited.

Under Massachusetts law assault and battery — the "intentional and unjustified use of force upon the person of another, however slight . . . ," *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931) — is subject to criminal penalties. See G. L. c. 265, § 13A. We note that nothing in the arbitrator's report suggests that Geller's conduct here was justified; the arbitrator, on the contrary, condemned the conduct.

In addition, children in school are now protected by law against physical or corporal punishment. G. L. c. 71, § 37G.[4] The statute specifies that teachers have no right to inflict corporal punishment on students and may use physical force only insofar as necessary to protect pupils, other persons, and themselves from an assault by a pupil. The arbitrator determined that Geller's conduct did not constitute corporal punishment but rather was intended to get the students' attention; getting attention, however, is not among the permissible circumstances enumerated in the statute. The arbitrator's decision further implied that corporal punishment requires a showing of an intent to hurt; G. L. c. 71, § 37G, suggests no such test. We recognize that, under G. L. c. 150C, we may not scrutinize the arbitrator's decision for either error of law or error of fact, *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. at 792-793; *Massachusetts Hy. Dept.*, 420 Mass. at 15, and, in most other circumstances, our inquiry would be at an end. Here,

---

[4]General Laws c. 71, § 37G, as appearing in St. 1982, c. 303, provides:

"(a) The power of the school committee or of any teacher or any other employee or agent of the school committee to maintain discipline upon school property shall not include the right to inflict corporal punishment upon any pupil.

"(b) The provisions of this section shall not preclude any member of the school committee or any teacher or any employee or agent of the school committee from using such reasonable force as is necessary to protect pupils, other persons, and themselves from an assault by a pupil. When such an assault has occurred, the principal shall file a detailed report of such with the school committee."

however, there was an application of physical force to students, such that bruises and marks were created, and emotional injury inflicted to a point where one of the students could not return to Geller's class. The question is not whether these were incidents involving infliction of corporal punishment, but whether the arbitrator, in finding no just cause for discharge and in reinstating the teacher, sanctioned conduct that violated the public policy of not using physical force against students and that put members of the public, here the teacher's sixth-grade students, at risk.

General Laws c. 119 provides further evidence of a public policy with respect to the protection of young people that is "well defined and dominant, . . . ascertain[able] 'by reference to laws and legal precedents and not from general considerations of supposed public interests,' " *Massachusetts Hy. Dept.*, 420 Mass. at 16, quoting from *W.R. Grace & Co.* v. *Local Union 759, Intl. Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. at 766. The clear mandate of this statute is the protection of children from both physical and psychological abuse. General Laws c. 119, § 51A, requires certain persons, including teachers, if they have "reasonable cause to believe that a child . . . is suffering physical or emotional injury resulting from abuse which causes harm or substantial risk of harm to the child's health or welfare," to make a written report to the Department of Social Services. Failure to make such a report is punishable by a fine of not more than $1,000. G. L. c. 119, § 51A, as amended through St. 1993, c. 50, § 23. There is a certain irony here in the fact that G. L. 119, § 51A, in order to accomplish the specific goal of identifying abused children, requires that, under pain of a fine, persons such as Geller should be on the lookout for behavior similar to that in which he himself engaged.

It is of no moment that none of the sixth-graders suffered long-term physical injury. The issue here is not whether the arbitrator made no finding that Geller inflicted "physical or emotional injury . . . which cause[d] harm or serious risk of harm to the child's health or welfare," but whether in finding no just cause for suspension, his award impinged on a well defined and dominant public policy designed to protect student members of the public from this kind of physical contact. Again, the intent of § 51A is "to protect children from the emotional harm of threatened injury as well as from the physical harm of

actual injury." Op. Atty. Gen., no. 59, at 139, 141 (May 27, 1975).

Those cases, both in our State and in other jurisdictions, where courts have found a policy so clear and well defined that termination, despite an arbitrator's award, has been upheld usually involve the physical safety of members of the public. See *Massachusetts Hy. Dept.*, 420 Mass. at 18, and cases cited. In a 1996 United States District Court decision in the Western District of Pennsylvania, physically pushing an elderly patient in a nursing facility so that the patient fell and "hurt all over," with no other sign of physical injury, was held sufficient, based · on a well defined policy of the need to protect patients from harm committed by their caretakers, to overturn an arbitral award that had reinstated the health care worker. *Highlands Hosp. & Health Center* v. *American Fedn. of State, County & Mun. Employees, Dist. Council 84*, 151 L.R.R.M. (BNA) 2629 (W.D. Pa. 1996).

Based on the foregoing statutes and case law, we find a clear and well defined public policy against the use of physical force, however slight, by a teacher against students, save for those exceptions listed in G. L. c. 71, § 37G(*b*) (see note 4, *supra*). We further find that the arbitrator's award, finding no just cause for discharge and reinstating a teacher who, on three separate occasions, forcibly pushed, shoved, jabbed, dragged, knocked down, or slammed into a locker three different sixth-grade students, is in conflict with that public policy and thus exceeded the arbitrator's powers. See G. L. c. 150C, § 11(*a*)(3). Were we to affirm the award we would enforce "an agreement that is contrary to public policy." See *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, 861 F.2d at 670. Here, "an established public policy condemn[s] the performance of employment activities in the manner engaged in by the employee . . . . [T]he arbitrator's finding of no just cause explicitly conflicts with that policy." *Id.* at 671. Geller has on more than one isolated occasion engaged in conduct, as a teacher, that is contrary to statute. The conduct is inextricably related to his employment duties. Geller's conduct in this case is sufficient to show that his continuing as a teacher poses a special risk of injury, physical and psychological, to students, and, if he is allowed reinstatement, the district will be made "an accessory to the wrongdoing." *Id.* at 671.

Having reached our decision on the basis of a clearly defined public policy of protecting students against physical harm, we

need not reach the question argued by the parties, whether the Legislature, in its 1993 rewriting of G. L. c. 71, § 42, see St. 1993, c. 71, § 44, intended to limit an arbitrator's authority by requiring the arbitrator to consider both the best interests of students and the elevation of performance standards in making an award, and we express no opinion on that issue. We also do not reach the evidentiary issue raised.

The judgment of the Superior Court is reversed, and a new judgment shall enter vacating the arbitration award.

*So ordered.*