Fahey, Elizabeth M., J.
Defendants Richard Payz-ant (“Payzant”) and Nancy Jackson (“Jackson”) seek to vacate an arbitration award rendered by Arbitrator Sarah E. Worley in favor of the plaintiff, The North American Assurance Company of America. The matter is before the Court on the defendants’ motion. For the reasons set forth below, the defendants’ motion is ALLOWED. The arbitrator’s award is vacated.
BACKGROUND
I summarize the facts “as found by the arbitrator, supplemented where necessaiy by undisputed aspects of the record.” City of New Bedford v. Massachusetts Comm’n Against Discrimination, 440 Mass. 450, 452 (2003). The defendants owned a yacht, the “Blaze of Glory,” that was destroyed by fire at Admiral’s Hill Marina in Chelsea, MA on April 8, 2006. The fire caused damage to a number of other boats as well. The yacht was insured through a policy issued by the plaintiff. After the fire, the defendants filed a claim with the plaintiff, and the latter then began an investigation. The Massachusetts State Police also investigated the fire and concluded that arson was a cause. The defendants were never charged with a crime in connection with the fire.
The insurance policy contains what is commonly referred to as a “cooperation clause.” Section F-Duties After an Accident or Loss provides, in pertinent part:
If there is a loss or claim that may be covered under this policy, you must ... (6) Cooperate with us in the investigation, defense or settlement of any loss, including permitting us to conduct non-destructive testing of the insured property at our expense . . . (8) Permit us to examine any records we require to verify the loss or its amount. . . (12) Submit to an examination under oath if we so request.
In a letter dated July 13, 2006, sent by certified mail, which Payzant received on July 18, 2006, the plaintiff, through its counsel, requested that Payzant produce by July 20, 2006 documents from an itemized list of twenty different categories of information.[1] The letter also scheduled an examination under oath for July 24, 2006. Thus, defendant was given one week from the mailing date of the letter, or two days from the date he received it, in which to gather a staggering amount of paperwork, and six days to prepare to be examined under oath. The examination was rescheduled for July 26,2006 because Payzant was unavailable on July 24, 2006, and subsequently rescheduled for August 7, 2006 because Payzant had obtained counsel. In a letter dated August 3, 2006, the plaintiff stated that it had not received any documents from the defendants, and requested that the defendants forward “any documents that are related to this claim to [plaintiffs counsel] immediately.”
Payzant gave a Statement under Oath on August 7, 2006, only 18 days after he received plaintiffs letter. It is undisputed that Jackson produced a number of documents on August 7, 2006.[2] In addition, the defendants claim that on October 29, 2007, Jackson produced, through counsel, “copies of Bank Statements, Resort Statements, and a Release so the insurer could obtain law enforcement records pursuant to their request.” Defendants’ Brief at 2.
On January 23, 2007, the plaintiff sent defendants a letter denying coverage on the ground that the defendants breached the cooperation clause by (1) providing false information and (2) failing to disclose requested documents. On February 20, 2007, the defendants sent a letter to the plaintiff asserting that *227 there were inaccuracies and misleading statements in the January 23 letter. The defendant countered the plaintiffs assertion of false information regarding the number of Workers’ Compensation claims he had filed by stating that he believed he had only filed one Workers’ Compensation claim and two other claims with his employer’s internal claims system. Regarding the plaintiffs assertion that the defendant had the intent to mislead when he omitted auto insurance claims from a list of prior insurance claims, the defendant pointed to the transcript of his Statement under Oath; the plaintiffs attorney told him to discount auto insurance claims in listing prior claims he had made.[3] The plaintiff also complained that it could not verify the defendant’s Statement under Oath that he spoke by phone to someone at Marine Parts Corporation; Payzant responded by stating that it was unlikely that a salesperson would remember such a short conversation. Finally, Payz-ant countered the plaintiffs assertion that he deliberately misled it about the whereabouts of one Arnold Oleson by pointing out that, in his Statement under Oath, he gave the plaintiff the name of Oleson’s workplace and also offered to get his cell phone to retrieve Oleson’s phone number.
With respect to the allegedly missing documents, Payzant stated in his letter dated February 20, 2007 that he was unable to produce income tax records for 2004-2005 because, on the advice of a tax professional, he did not file taxes since he was on Workers’ Compensation and earned too little to be required to file. He also stated that he believed Jackson had turned over credit card records showing Payzant’s whereabouts on April 6-10, 2006, but he offered to produce them if he was mistaken. He enclosed the signature page for his Statement under Oath, signed and notarized on February 12, 2007. Finally, he enclosed an Authorization to Release Investigation Materials that was signed, dated, and witnessed on February 12, 2007. In the February 20, 2007 letter, Payzant conditioned the plaintiffs use of the release, stating that he was only providing it “for the purpose of preventing [plaintiff] from using his refusal as a ground for refusing coverage.” Further, he stated that if the plaintiff “intends to go forward with its refusal of coverage, then Mr. Payzant is expressly forbidding [plaintiff] from using the enclosed release.” During argument on this motion, defendant’s counsel advised that this release was to be used only if the plaintiff was continuing its investigation.
On March 5, 2007, the plaintiff filed a complaint for declaratory relief in the Superior Court.[4] The defendants answered and filed a counterclaim for breach of contract and violation of M.G.L.c. 176D, §3(a, e-g, n) and c. 93A, §3(9). The matter was eventually referred to arbitration before Arbitrator Sarah E. Worley of Pretrial Solutions, Inc., who issued a decision in favor of the plaintiff on December 11, 2009.
First, Arbitrator Worley found that because the deadlines imposed by the plaintiff did not violate the terms of the policy, they were valid. She found that “[t]he only procedural niceties to which the plaintiffs are required to adhere are those contained within the applicable policy.” She rejected the defendants’ argument that the Massachusetts Rules of Civil Procedure should be used as a touchstone for establishing appropriate deadlines in the insurance claim investigation process. Second, Arbitrator Worley stated, “while I am mindful of the defendants’ plight here,” the plaintiffs requests for documents were within the scope of an insured’s duty imposed by cooperation clause under Massachusetts law. She found that the defendants’ “efforts” to comply with the plaintiffs requests were insufficient. She made no mention of the absurdly short time limits imposed by the plaintiff for such extensive document production. She cited the plaintiffs contention “that it was prejudiced by the defendants’ breach of the policy requirements,” and legally incorrectly found that “it is the defendants’ burden to prove that the plaintiff was not prejudiced.”
Arbitrator Worley concluded that Payzant breached the cooperation clause and thus voided coverage under the policy for both defendants. She found insufficient evidence to conclude that the plaintiff breached M.G.L.c. 176D. The defendants now seek to vacate the arbitration award under M.G.L.c. 251, §12(a).
DISCUSSION
“Public policy in the Commonwealth strongly encourages arbitration.” School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003). Pursuant to M.G.L.c. 251, §12(a), the Superior Court “shall vacate an [arbitration] award” if:
(1) the award was procured by corruption, fraud or other undue means;[5]
(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
This amounts to an extremely limited standard of review. I am “strictly bound by an arbitrator’s findings *228 and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing.” City of Lynn v. Thompson, 435 Mass. 54, 61 (2001). “Absent fraud, the court’s inquiry is confined to the question of whether the arbitrator exceeded the scope of his reference or awarded relief in excess of his authority.” School Comm. of Waltham v. Waltham Educators Ass’n., 398 Mass. 703, 705-06 (1986) (citing School Comm. of West Springfield v. Korbut, 373 Mass. 788, 791-92 (1977)).[6] This narrow scope of review is because arbitration “would have little value if it were merely an intermediate step between a grievance and litigation in the courts.” School Comm. of Pittsfield, 438 Mass. at 758.
An award is in excess of the arbitrator’s authority if it offends public policy. M. O’Connor Contracting, Inc. v. City of Brockton, 61 Mass.App.Ct. 278, 286 n.13 (2004); School Dist. of Beverly v. Geller, 50 Mass.App.Ct. 290, 293 (2000) (citing Plymouth-Carver Reg’l School Dist. v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990)). To vacate the award on this ground, the public policy in question must be “well-defined, dominant, and readily ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Id. at 283 (citing Geller, 435 Mass. 223, 237-38 (Ireland, J., concurring).[7]
In M. O’Connor Contracting, 61 Mass.App.Ct. at 284-85, the Court of Appeals found that the arbitrator’s award of damages to the plaintiff against the Ciiy of Brockton violated both a statutory provision, M.G.L.c. 93A, §2, under which government entities are exposed to liability only when they are engaged in trade or commerce, and “fundamental principles of sovereign immunity.” In School District of Beverly v. Geller, 50 Mass.App.Ct. at 297-98, the Appeals Court vacated an arbitrator’s award that reinstated a teacher accused of using corporal punishment on sixth-graders. The Court emphasized that the arbitrator’s erroneous finding that the teacher’s conduct did not violate a statute outlawing corporal punishment was not enough on its own to vacate the award. Id. at 295. The Court looked to a combination of general criminal law, the statutory scheme regarding corporal punishment, and case law and found that the Commonwealth has a “clear and well defined public policy against the use of physical force, however slight, by a teacher against students, save for those exceptions listed [in the statute].” Id. at 297. Because the award in favor of the teacher violated that public policy, the Appeals Court vacated the award. Cf. Town of Salisbury v. New England Benevolent Association, Locals 15 and 35, No. 2008-02320-A, 5-6 (Super.Ct. Feb. 10, 2010) (Superior Court vacated arbitrator’s retroactive award of fifteen sick leave days for every year that police officers bought back from a retirement board. The Court found that award went against public policy established by a 1946 case governing reasonableness of sick days; if upheld, it would provide a windfall to employees, to the town’s detriment).
“[B]ecause the public policy doctrine allows courts to bypass the normal heavy deference accorded to arbitration awards and potentially to judicialize’ the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.” O’Connor Contracting, 61 Mass.App.Ct. at 285. However, this is one of those rare cases in which it is appropriate to vacate the arbitrator’s award due to contravention of public policy.
The arbitrator in this case made a clear error of law when she wrote, “The plaintiff here contends that it was prejudiced by the defendant’s breach of the policy requirements; it is the defendant’s burden to prove that the plaintiff was not prejudiced” (emphasis added). On the contrary, it has been the law in the Commonwealth for two decades that “an insurer seeking to disclaim liability on the grounds of an insured’s breach of a cooperation provision may do so only upon making an affirmative showing of actual prejudice resulting from that breach.” Darcy v. Hartford Insurance Co., 407 Mass. 481, 491 (1990). Because this holding in Darcy constituted a sharp break from then-existing law, the Supreme Judicial Court limited it to claims arising after that date. Id. The parties in this case entered into the insurance policy on May 13, 2005, so the assignment of the burden on the insurer applies. It was the plaintiffs burden to show actual prejudice resulting from the insured’s alleged breach of the cooperation clause.
Pursuant to the long-standing public policy favoring arbitrators’ decisions, courts are not permitted to vacate the arbitrator’s decision based on an error of law or fact. School Comm. of Waltham 398 Mass. at 705. However, the “source of [my] discomfort is that in the circumstances presented the award is not simply factually and legally erroneous”; it also conflicts with public policy. O’Connor Contracting, 61 Mass.App.Ct. at 286. As the Supreme Judicial Court said in Darcy, it is true that provisions like notice, consent-to-settlement, and cooperation clauses “are designed primarily to protect the insurer’s interest in avoiding payment on claims which it cannot adequately defend.” Darcy, 407 Mass. at 490; Metlife Auto & Home v. Cunningham 59 Mass.App.Ct. 583, 589 (2003) (these clauses “share a common purpose, to give an insurer the opportunity to protect its interests” (internal citations omitted)).
When the insurer’s interest “has not been jeopardized by the insured’s breach, in the sense that the insured’s infraction does not seriously impair the insurer’s investigation or defense of the action, there is no persuasive reason to allow the insurer to deny coverage under the policy.” Darcy, 407 Mass, at 490. This focus on whether the insurer’s interests were actually harmed is reflected in the longstanding rule that an insurer may not disclaim liability due to lack *229 of cooperation unless it has exercised diligence and good faith in obtaining the insured’s cooperation. Id. at 491 (citing Imperiali v. Pica, 338 Mass. 494, 498 (1959)). The Court in Darcy reasoned that a rule that does not require insurers to prove actual prejudice would “constitute a retreat into a mode of interpretation of insurance policies which invites technical for-' feitures, and would conflict sharply with the view, previously expressed by both the Legislature and this court, that forfeitures should occur only upon a showing of actual prejudice to an insured’s interests.” Id. at 486 (discussing notice provisions but later noting that the same reasoning applies to cooperation clauses).
In addition to this case law, the legislature has devoted much attention to the manner in which insurance companies and other corporations treat consumers. The defendants in this case claim that the plaintiff violated various subsections of M.G.L.c. 176D, §3(9), which enumerates 14 ways that insurers can engage in an “unfair claim settlement practice.” Chapter 93A then provides a vehicle for insureds to seek a remedy for such violations. This statutory scheme clearly evidences an intention by the legislature to protect insureds from unfair insurance practices. The combination of these statutory protections and case law establishing the insurer’s burden to show actual prejudice from cooperation clause breaches amounts to public policy in favor of fair, good faith claim settlement practices.
Given the facts in this case, the arbitrator exceeded her authority and contravened public policy when, in error of both fact and law, she found in favor of the plaintiff. She did not address the defendants’ claims under Chapter 176D in any material way, mentioning the basis of their claim only cursorily in the introductory and concluding paragraphs of her opinion. She brushed aside all of the efforts by the defendants to fairly speedily comply, within three months, with the plaintiffs many documentary requests. Arbitrator Worley implicitly endorsed the plaintiffs use of arbitrary, unreasonable, and shockingly short deadlines and its seemingly impossible production requests. She appeared not to consider the defendants’ stated reasons for why two documents were missing, such as the fact that they do not even exist, given defendant Payzant’s belief that he was not required to file income taxes while on Workers’ Compensation. She similarly dismissed defendants’ assertions about the plaintiffs mischaracterizations of statements made during defendant Payzant’s Statement under Oath. Perhaps most strikingly, she did not require the plaintiff to put forth any evidence that the alleged breaches by the defendants prejudiced its investigation, thus allowing the plaintiff to disclaim liability without any “persuasive reason” and taking the parties back to an era in which “technical forfeitures” were the norm. Darcy, 407 Mass. at 491, 486.
ORDER
For the reasons stated herein, the defendants’ Motion to Vacate Arbitration Award is ALLOWED. This case is scheduled for a status conference at 2:00 p.m. on May 28, 2010, at which time counsel should be prepared to address the scheduling of this case for trial. Counsel should attend with knowledge of their and their witnesses’ schedules so that a firm trial date can be set.

 The plaintiff requested documents from the following categories: (1) purchase, sale, and loan records for the Blaze of Glory: (2) ownership records: (3) maintenance and repair records: (4) storage records; (5) offers for sale; (6) photographs and videos; (7) witness statements; (8) records and information about the cause or suspected cause of the fire; (9) telephone and cellular phone records from March and April 2006; (10) records of defendant’s whereabouts on April 6-10, 2006; (11) bankruptcy records; (12) real estate purchases and sale and loan records dating back to 2003; (13) mortgages, collections and foreclosures on any property ever owned by the defendant; (14) income records since 2003; (15) asset records, including savings and checking accounts, since 2003; (16) financial obligations that the defendant must pay for on a regular basis since 2003;(17) any debts the defendant has acquired since 2003; (18) the defendant’s criminal record for the past 10 years; (19) any insurance claims filed by the defendant in the past 10 years; and (20) other records relating to the fire or his claim under the policy.

 Defendants state in their brief that the documents totaled 402 pages. Defendants’ Brief at 2. On August 7, 2006, plaintiffs counsel referenced the documents that defendant Jackson brought: “We’ve only received the documents today. I had asked for them in advance.” Transcript of Examination of Richard Payzant at 161.

 Plaintiff s counsel said specifically, “I don’t want to know about health or auto but other — any other types of insurance claims.” Transcript of Examination of Richard Payzant at 10.

 It is unclear why the plaintiff sought relief in the Superior Court given that Section G of the insurance policy contains the following clause: “If you make a claim under this policy and we disagree about whether the claim is payable or about the amount due to you under the policy, the disagreement must be resolved by binding arbitration . . .”

 In its opposition to the motion to vacate, the plaintiff, assumes that the defendant is seeking to vacate the order based on the “undue means” ground in M.G.L.c. 251, §12(a)(l) because the defendant uses that phrase in its motion. However, the defendant cites the section as a whole. This discussion is not confined to consideration of §12(a)(l).

 The Commonwealth, the federal government and other states have a longstanding public policy in favor of arbitration. Massachusetts’ courts grant substantially more deference to arbitrators’ decisions than to decisions of state agencies, governmental bodies that, unlike arbitrators, are not paid directly by one or both of the parties. See M.G.L.c. 30A, § 14(g) (agency decisions may be modified or vacated (only) if “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law”). This standard of review of administrative agencies is already quite "deferential." The rationale for the even more extremely deferential standard of review imposed on arbitrator’s decisions by statute and appellate case law is today unclear, at least to this court. Such a generous standard of review may have been appropriate decades ago when “arbitration was used primarily in commercial trade disputes and later in labor and trade union disputes. More recently, however, arbitration clauses have made their way into ordinary consumer contracts and transactions, oftentimes vis-a-vis fine print contained in con *230 sumer loans, insurance policies, and garden variety purchase agreements.” Worldwide Asset Purchasing, LLC v. Easterling, 2009 WL 4048108, Ohio App. 10 Dist., 2009 (citing West v. Household Life Ins. Co., 170 OhioApp.3d 463, 467-68 (2007)). In this 21st centuiy, it is almost impossible to find a credit card company or even an auto or homeowners’ insurance policy that does not include mandatory arbitration provisions, all of which are adhesion type contracts, where the consumer has no choice, no ability to negotiate the provision. This court respectfully suggests that this extremely deferential standard of review of arbitrator’s decisions, even when they are wrong on the facts and/or law, and especially when the decision to arbitrate has not been negotiated by the parties, is unfair and unjust and should be revisited by the legislature and appellate courts. See generally, Minnesota v. National Arbitration Forum, Inc., No. 27-CV-09-19550 (Minn.Dist. July 17, 2009) (Due to an inherent conflict of interest consent, Judgment entered preventing National Arbitration Forum, the country’s largest administrator of credit card and consumer collections arbitrations, from arbitrating “consumer disputes,” i.e. “A dispute between a business entity and a private individual which relates to goods, services, or property of any kind allegedly provided by any business entity to the individual, or payment for such goods, services, or property”); Michael Z. Green, Preempting Justice Through Binding Arbitration of Future Disputes: Mere Adhesion Contracts or a Trap for the Unwary Consumer? 5 Loy. CONSUMER L.Rev. 112 (1993).

 Many of the cases applying the public policy ground to vacate arbitrators’ decisions deal with M.G.L.c. 150C, §11(a)(3) (“the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law”), regarding collective bargaining agreements to arbitrate. This language is almost identical to that in M.G.L.c. 251, §12(a)(3) (“the arbitrators exceeded their powers”), the applicable provision in this case. Our courts have used the same analysis in addressing the public policy ground, as the Appeals Court did in applying this test in the M.G.L.c. 251 context.