Fishman, J.

INTRODUCTION

The plaintiff, Town of Bedford (“the Town”), brings this action to vacate an arbitration award pursuant to G.L.c. 150C, §ll(a)(3). The Town contends that it did not violate the collective bargaining agreement when the Chief of the Fire Department, Kevin MacCaffrie (“Chief’), unilaterally changed the number of call-back firefighters from four to three. The Town argues that this type of decision falls within the Chiefs managerial prerogative and is not the proper subject of arbitration. Both parties have filed motions for judgment on the pleadings. The defendant, the Bedford Permanent Fire Fighters Association, Local 2310 (“the Union”), seeks confirmation of the award pursuant to G.L.c. 150C, §11 (d). After hearing, and upon review and consideration, the Town’s Motion for Judgment on the Pleadings is DENIED, the Union’s Motion for Judgment on the Pleadings is ALLOWED, and the arbitration award is AFFIRMED, for the reasons set forth below.

BACKGROUND

The facts found by the arbitrator are summarized as follows. The Town and the Union were parties to a collective bargaining agreement (“the agreement”) that was effective from July 1, 2001 to June 30, 2004. During the negotiation process, the parties discussed the number of firefighters that would be called back to cover the station while on-duty firefighters responded to an emergency. The parties agreed to increase the number of call-back firefighters from three to four. This change was outlined in a memorandum issued by the Chief on October 30, 2001, and in the Standard Operating Procedures. However, the change was not reflected in the final written agreement.
On February 26, 2002, seven months after the agreement went into effect, the Chief submitted to the Union a new emergency call-back policy that reduced the number of firefighters called back to cover the station during an emergency response from four to three. The Chief asked the Union to review and comment on the new policy. The Union informed the Chief that any attempt to implement the policy would result in the Union filing a grievance. The Chief implemented the policy on March 17,2002, and it remained in effect until June 30, 2002, the end of the first year of the agreement. After this period, the number of firefighters called back for emergency coverage returned to four.
On March 21, 2002, the Union filed a grievance challenging the new call-back policy. The matter was arbitrated on October 4,2002. The arbitrator rendered an opinion on January 21, 2003. The arbitrator found that the Bedford Fire Department violated the agreement when it implemented the new call-back procedure on March 17, 2002. The arbitrator held that while the agreement did not specifically contain a provision that addressed the number of firefighters to be called back, there was language in the agreement that made all past practices binding.[1] The arbitrator found that the Bedford Fire Department had a past practice of calling back one fewer firefighter than the required minimum and that this was enforceable through the past practice clause. Therefore, because the minimum number of firefighters to cover any shift was five, the policy implemented on March 17, 2002, which reduced the call back number from four to three, violated the agreement.
In addition, the arbitrator held that the language in Article 7 of the agreement, which states that “the system for the call back of personnel in emergency situations shall be determined by the Fire Chief’ refers to the manner in which firefighters would be called back to the station, not to the number of firefighters to be called back. The arbitrator also held that because the Article 3, Management Rights clause did not expressly grant the Town the right to determine the number of firefighters to be called back for emergency coverage, this section did not supersede the “past practice" clause. The arbitrator did not address the Town’s managerial rights argument under Billerica v. International Association of Firefighters, Local 1495, 415 Mass. 692 (1993), because he believed he had no authority to interpret the law. The arbitrator did not order a remedy because none was specifically requested by the Union.

DISCUSSION

The court’s review of an arbitrator’s decision is governed by G.L.c. 150E, §11E, and is limited in scope. School Comm. of Hanover v. Hanover Teachers Ass’n, 435 Mass. 736, 740 (2002). “Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on fraud, arbitrary conduct or procedural irregularity in the hearings.” Id., citing Plymouth Carver Regional School Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (internal quotations omitted). “An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement ... by awarding relief beyond that which the parties bound themselves ... or by awarding relief prohibited by law.” School Comm. of Hanover, 435 Mass. at 740.
The Town argues that issues concerning call-back procedures should not have been submitted to arbitration because the subject is reserved for the Town’s discretion under a managerial rights theory. The Union contends that call-back procedures are not managerial prerogatives, but even if they are so construed, the call-back provision was at least enforceable during the first year of the agreement.
When one party to a collective bargaining agreement is a public employer, there are certain subjects that cannot be arbitrated, even if they inadvertently become part of an agreement. The courts have held that some subjects are so central to the role of a government agency and its accountability in the political process, that decisions regarding these topics are *102 reserved for the sole discretion of the public employer. Lynn v. Labor Relations Commission, 43 Mass.App.Ct. 172, 178 (1997). These subjects are considered non-delegable rights of management “that a municipality and its agents may not abandon by agreement, and that an arbitrator may not contravene.” Billerica, 415 Mass, at 694. “(T]o the extent, subjects within that zone find their way into a collective bargaining agreement, the provisions of the collective bargaining agreement are not enforceable.” Boston v. Boston Police Superior Officers Federations, 29 Mass.App.Ct. 907, 908 (1990).
While determinations of staffing levels that affect public safety might appear to be nondelegable management prerogatives that are “beyond the scope of public sector bargaining,” see Boston v. Boston Police Patrolmen’s Assoc., Inc., 403 Mass. 680, 684 (1989) (decision regarding number of officers assigned to cruisers is nondelegable), the Supreme Judicial Court has held that minimum staffing requirements that are, or are similar to job security provisions, such as the minimum number of firefighters required to be on duty at any time, are enforceable for periods not exceeding one fiscal year. Billerica, 415 Mass. at 694-95, citing Boston Teachers Union, Local 66 v. School Comm. of Boston, 386 Mass. 197, 212 (1982). The Court reached this conclusion despite its express recognition that “a minimum-staffing requirement in a fire department may involve public safety considerations,” because “such a requirement has a direct effect on the number of people that will be employed and is similar to a job security clause . . .” Id, at 695.
The Court held, however, that although minimum staffing provisions were managerial rights that could be bargained for, they were not enforceable in the second year of the agreement without funding appropriated by the town because such a provision would interfere with a town’s exclusive managerial prerogative to annually determine staff levels and appropriate funding. Id. at 694-95. Similarly, in Saugus v. New-bury, 15 Mass.App.Ct. 611, 613 (1983), the Appeals Court held that job security clauses are not enforceable for more than one fiscal year, and that a collective bargaining provision that attempts to control a public employer’s ability to determine staffing levels beyond one year intrudes upon an exclusive managerial prerogative. See also Melrose and Melrose Firefighters Union, Local 1627, 22 M.L.C. 1209, 1218-19 (1995). In other words, a minimum staffing provision that is in the nature of a job security provision can be enforced under a collective bargaining agreement during a fiscal year in which funding is appropriated.
In the case at bar, the Town argues that call-back requirements are essentially the same as the minimum staffing requirements discussed in Billerica and Saugas, and, therefore, are not subject to arbitration under a management rights theory. While this Court concludes that a provision found to exist in a collective bargaining agreement establishing the number of firefighters required to be called back is a minimum staffing requirement akin to a job security provision, under the Billerica decision, such a provision is enforceable for a period not exceeding one fiscal year in the absence of available appropriated funds. 415 Mass, at 696, 696. In this case, the question of enforceability arises in the first fiscal year.
The Town claims that the record is devoid of evidence that a specific appropriation was made to fund the call-back requirement, and that, absent this proof, any such provision is unenforceable. Although there is no evidence of an appropriation, the Labor Relations Commission has ruled, and this Court agrees, that a public employer is required to abide by a minimum staffing provision set forth in a collective bargaining agreement in the first fiscal year unless the record demonstrates that insufficient funding was appropriated during that year. Melrose Firefighters Union, Local 1627, 22 M.L.C. at 1218-19. It is the burden of the party that raises legislative disapproval of a contract item as an affirmative defense to prove that the item has been clearly and intentionally rejected. Chelsea and Local 937, 13 M.L.C. 1144, 1152, n.8 (1986).[2] Therefore, in order for the Town to prevail on its claim that it had a nondelegable managerial prerogative to unilaterally changing the call-back procedure, it must prove that the legislative body of Bedford clearly and intentionally rejected the funding of call-back procedures for the first year of the agreement. The Town failed to satisfy that burden.[3]
Having determined that a call-back provision of the fype in question here is enforceable, the next questions are whether the agreement in fact contains such a provision, and, if so, whether the provision was violated. The arbitrator found that the staffing requirement of four call-back firefighters was a provision of the agreement. The Chief elected to reduce the number of contractually mandated call-back firefighters eight months after Bedford’s legislative body had approved the agreement. When the Chief unilaterally changed the call-back procedures during the first year of the agreement, he violated the agreement.
The Town contends, however, that the arbitrator award should be vacated because his interpretation of the agreement was manifestly impossible and irrational. This Court must give substantial deference to an arbitrator’s decision. “Once it is determined that a matter is arbitrable, the court generally will not review the merits of an arbitrator’s decision.” School Comm of Boston v. Boston Teachers Local 66, 378 Mass. 65, 69 (1979). The court cannot disturb an arbitrator’s interpretation of a collective bargaining agreement, even if it finds errors of law or fact in the arbitrator’s decision. Lynn v. Thompson, 435 Mass. 54, 61 (2000). “The question of interpretation of the agreement is for the arbitrator.” Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). It is *103 the arbitrator, and not the court, who construes ambiguities in a collective bargaining agreement. See Concerned. Minority Educators of Worcester v. School Comm. of Worcester, 392 Mass. 184 (1984).
Here, the evidence presented to the court included the following: (1) the testimony relating to the Fire Department’s past practice regarding call-back procedures; (2) evidence that the parties bargained for a specific number of firefighters to be called back to cover emergencies during negotiations; (3) the memo from the Chief announcing the changes from three to four call-back firefighters; and (4) the inclusion of the increase in the number of call-back firefighters in the standard operating procedures. Based on this evidence, this Court cannot find that the arbitrator’s award was either “implausible” or “irrational.”

ORDER

Based on the foregoing, it is hereby ORDERED that the Town of- Bedford’s motion for judgment on the pleadings is DENIED, the Bedford Permanent Fire Fighters Association, Local 2310’s motion for judgment on the pleadings is ALLOWED, and the arbitrator’s award is AFFIRMED.

Article 5 of the agreement stated that “the provisions of this agreement will supersede all prior agreements and understandings (excluding past practices) .. . and shall govern their entire relationship.”

Based on the holding in Billerica, it is presumed that the burden would rest on the union to establish that appropriations had been made to fund the provision in any subsequent year. It is not necessary for this Court to decide that issue, however.

The Town argues that because there was no specific language in the agreement regarding the number of callbacks, the legislative body did not have an opportunity to approve or reject funding for the call-back provision. Given the nature of the burden on this issue, this Court is unable to conclude that the absence of specific language is tantamount to a clear and intentional rejection of funding. Indeed, the record reflects that the parties negotiated and agreed upon the call-back procedure, which was later presented to the department in a memo and implemented into the Standard Operating Procedures, and that the arbitrator was able to identify the inclusion of the call-back procedures through the past practice clause of the agreement.